**Arthur Lance BIER, Plaintiff-Appellee,**

v.

**Paul D. FLEMING and Charles I. Alatis, Defendants-Appellants.**

Nos. 81–3574, 81–3587.

United States Court of Appeals, Sixth Circuit.

Argued June 21, 1983.

Decided Sept. 19, 1983.

Certiorari Denied Feb. 21, 1984. See 104 S.Ct. 1283.

John G. Papandreas, Jonathan H. Soucek, Longano, Papandreas, Fahrer & Marksz, Cleveland, Ohio, for Alatis.

William J. McDonald, Asst. Atty. Gen., Columbus, Ohio, for Fleming.

Jack N. Turoff, Cleveland, Ohio, for plaintiff-appellee.

Before EDWARDS, Chief Circuit Judge, LIVELY, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

Plaintiff-appellee brought this civil rights action under 42 U.S.C. § 1983 alleging that defendants-appellants denied him due process of law by attempting, on two occasions, to prohibit him from racing in the Painesville Meet at the Northfield Race Track, Northfield, Ohio.

The district court held in favor of Bier, concluding that Bier's occupation as a harness horse race driver-trainer was an appropriate liberty and property interest protected by the fourteenth amendment, and therefore, he was entitled to procedural due process before his right as a harness race driver was infringed. *Bier v. Fleming,* 538 F.Supp. 437 (N.D.Ohio 1981). Reference is made to the opinion of the district court for a detailed recitation of pertinent facts.

Specifically, as to Charles Alatis, president and general manager of Painesville Raceway, Inc., the district court held that his action of attempting to prevent Bier from racing on August 12, 1977, constituted state action and infringed plaintiff's property and liberty interests without due process of law. With respect to Paul Fleming, Executive Secretary of the Ohio Racing Commission, the district court ruled that he revoked Bier's racing license without a prior hearing in violation of state law and the due process clause of the fourteenth amendment. For these violations, the district court awarded plaintiff $30.00 compensatory damages against Alatis, $1.00 nominal damages against Fleming, and attorney fees against both Alatis and Fleming in their personal and official capacities.

Both defendants appeal the district court's decision, citing several reasons for reversal. Charles Alatis contends mainly

that his actions did not amount to state action within the meaning of § 1983. Paul Fleming asserts that he acted in good faith and therefore should be accorded the defense of qualified immunity.

We hold that, under the peculiar facts and circumstances of this case, appellant Alatis' actions did not constitute state action for purposes of § 1983 and that the district court erred in not according Fleming the defense of qualified immunity. Accordingly, we reverse and remand the case with directions to dismiss the complaint. We do not reach the question whether Bier was deprived of any right, privilege or immunity secured by the Constitution or laws of the United States without due process.

## I

Painesville Raceway, Inc. (Painesville), an Ohio corporation, is a permit holder licensed to conduct horse racing meets in Ohio. *See* Ohio Rev.Code Ann. § 3769.01 (Page 1980). In conducting one of four meets each year, Painesville leases Northfield Park, a privately owned and operated race track facility. Painesville employs all personnel necessary to conduct the meet, including security guards and state racing officials.

Bier intended to race in the Painesville Meet. However, on August 8, 1977, four days prior to the opening of the meet, Alatis notified Bier that his application for stall space had not been received and that Bier would have to vacate the stall space he acquired previously at Northfield. Concomitantly, Alatis was informed that Bier would not have any training responsibilities during the Painesville Meet and that he intended merely to ride horses for various owners. Claiming that Painesville had a rule prohibiting "catchdrivers" from participating in its meets, Alatis instructed security personnel not to admit Bier on the Northfield premises. Additionally, Alatis instructed the racing office to remove Bier's name as a driver from the racing program. On August 12, 1977, Bier filed a complaint in the district court and obtained a temporary restraining order preventing his exclusion from the Painesville Meet. Thereafter,

Bier returned to Northfield Park and participated in the meet.

The district court held that Alatis' conduct constituted action under color of state law for purposes of § 1983. The court concluded that the State became involved in otherwise private actions when state racing officials, upon Alatis' instructions, removed Bier's name from the racing program. *See* 538 F.Supp. at 446. We disagree and conclude that plaintiff failed to demonstrate the requisite degree of state action necessary to maintain a claim for relief under § 1983.

To be entitled to relief under § 1983, plaintiff must establish that defendant deprived him of a right secured by the Constitution and the laws of the United States and that the deprivation occurred under color of state law. *See Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185 (1978); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the state?' " *Rendell-Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982), quoting *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982) (holding that conduct which satisfies the "state action" requirement of the fourteenth amendment satisfies also the "under color of state law" requirement of § 1983). There must be a sufficiently close nexus between the state and the conduct challenged so that defendant is treated as a state actor and defendant's act is treated as that of the state. *See Lugar, supra,* 457 U.S. at 937, 102 S.Ct. at 2754–55; *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982), quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). Accordingly, the party charged must be a state official, or he must have acted together with or received

significant aid from state officials, or his conduct otherwise must be chargeable to the state. *Lugar, supra,* 457 U.S. at 937, 102 S.Ct. at 2754.

█ The Supreme Court has developed the so-called nexus test to determine whether conduct of a private actor is fairly attributable to a state. Under this test, a finding of state action may be made when "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson, supra,* 419 U.S. at 351, 95 S.Ct. at 453. *See also Burton v. Wilmington Parking Authority,* 365 U.S. 715, 724–25, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961). Under this approach "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." *Jackson, supra,* 419 U.S. at 350, 95 S.Ct. at 453. In essence, it must be demonstrated that the State is intimately involved in the challenged private conduct in order for that conduct to become attributable to the state for purposes of a § 1983 action.

█ The required nexus may be established by showing that the State has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum, supra,* 457 U.S. at 1004, 102 S.Ct. at 2786. *See also Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 172–73, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972); *Adickes, supra,* 398 U.S. at 170, 90 S.Ct. at 1615. Also a nexus may be established if the private entity has exercised powers that are "traditionally the exclusive prerogative of the State." *Jackson, supra,* 419 U.S. at 353, 95 S.Ct. at 454. *See also Blum, supra,* 457 U.S. at 1005, 102 S.Ct. at 2786; *Flagg Brothers, Inc., supra,* 436 U.S. at 157–61, 98 S.Ct. at 1733–36.

█ Analyzed in the light of these considerations, we conclude that the district court's finding of state action cannot stand. Painesville Raceway, Inc., is a private corporation. Defendant Alatis, as Painesville's president and general manager, performs as a private individual in discharging his corporate duties and responsibilities. Although the State regulates heavily the horse racing industry, such extensive regulation does not, in itself, transform otherwise private actions into state action for purposes of § 1983. *See Blum, supra,* 457 U.S. at 1004, 102 S.Ct. at 2786, quoting *Jackson, supra,* 419 U.S. at 350, 95 S.Ct. at 453. Likewise, even though the State derives revenue from race track operations, such benefits can hardly be viewed as automatically converting private acts into state action. *See Fulton v. Hecht,* 545 F.2d 540, 542–43 (5th Cir.), *cert. denied,* 430 U.S. 984, 97 S.Ct. 1682, 52 L.Ed.2d 379, *reh'g denied,* 431 U.S. 975, 97 S.Ct. 2941, 53 L.Ed.2d 1073 (1977) (financial benefits accruing to a state from the continued operation of dog racing track do not convert private conduct into state action). Additionally, there is no dispute that it was a private decision, on the part of Alatis, to exclude Bier from the Painesville Meet. Similarly, it was Alatis who instructed security guards not to permit Bier on the Northfield premises. The only record evidence of any connection between Alatis' conduct and that of the State, is one isolated incident of the racing officials removing Bier's name from the racing program upon Alatis' request.

We conclude that the conduct of the racing officials was not a sufficient exercise of coercive power or significant encouragement on part of the State to find state action in an otherwise private decision. Accordingly, "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Blum, supra,* 457 U.S. at 1004, 102 S.Ct. at 2786, citing *Flagg Brothers, Inc., supra,* 436 U.S. at 164–65, 98 S.Ct. at 1737–38; *Jackson, supra,* 419 U.S. at 357, 95 S.Ct. at 456.

To support the finding of state action plaintiff, as well as the district court, rely heavily on the Third Circuit's decision in *Fitzgerald v. Mountain Laurel Racing, Inc.,* 607 F.2d 589 (3d Cir.1979), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814

(1980) (finding a sufficiently close nexus between the State and a racing company's actions). In that case a horseman suspected of not giving his best effort was suspended from the track by the racing company. The company suspended the horseman only after it conferred with state officials and notified the horseman of the suspension in the presence of state officials. Further, the company was acting to enforce a state racing rule. None of the above factors found in *Fitzgerald* are present in the case at bar and the Third Circuit emphasized that it was the presence of those factors that led it to find state action. *See* 607 F.2d at 597–99. Moreover, under the particular facts and circumstances of this case, we find persuasive Judge Adams' well articulated reasoning in *Fitzgerald* as expressing a better rule. *See* 607 F.2d at 604–11 (Adams, J., dissenting).

Therefore, we hold that the record does not support the conclusion that defendant Alatis acted under color of state law in attempting to exclude Bier from the Painesville Meet.

## II

On August 24, 1977 Bier was hand-delivered a letter from the Ohio Racing Commission, over defendant Paul Fleming's signature, notifying him of the Commission's decision to revoke his racing license. The district court held that such action violated state law and fourteenth amendment due process principles. In rejecting Fleming's claim that he acted in good faith and, therefore, should be accorded the defense of qualified immunity, the court noted that the Commission's attorney had informed the Commissioners that they could not revoke Bier's racing license without a pre-termination hearing and, despite this knowledge, Fleming sent the August 24th letter to Bier stating that his license was "hereby revoked." The court concluded that Fleming, although a "state employee in a position of considerable authority," could not avail himself of the qualified immunity defense since he "did not rely on the advice of counsel." 538 F.Supp. at 447, 449. We find

the district court's decision unsupported by the record and hold that Fleming is entitled to the defense of qualified, good faith immunity.

■ State officials have a right to qualified immunity for actions taken in their official capacity if they acted in good faith and on the basis of a reasonable belief that their actions were lawful. *See Wood v. Strickland,* 420 U.S. 308, 318–22, 95 S.Ct. 992, 999–1000, 43 L.Ed.2d 214, *reh'g denied,* 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 790 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1691–92, 40 L.Ed.2d 90 (1974); *Hall v. United States,* 704 F.2d 246, 249–50 (6th Cir.1983). *See also Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978) (deeming it "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials"). Under the doctrine or qualified, good faith immunity, a government official performing acts within the scope of official conduct is insulated from damages under § 1983 if (1) at the time and in light of all circumstances there existed reasonable grounds for the belief that the action taken was appropriate and (2) the officer acted in good faith. *See Scheuer, supra,* 416 U.S. at 247–48, 94 S.Ct. at 1691–92.

The parameters of this defense were clarified recently by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982):

Decisions of this Court have established that the "good faith" defense has both an "objective" and a "subjective" aspect. The objective element involves a presumptive knowledge of and respect for "basic, unquestioned constitutional rights." *Wood v. Strickland,* 420 U.S. 308, 320, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975). The subjective component refers to "permissible intentions." *Ibid.* Characteristically the Court has defined these elements by identifying the circumstances in which qualified immunity would *not* be available. Referring both to the ob-

jective and subjective elements, we have held that qualified immunity would be defeated if an official *"knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with malicious intention* to cause a deprivation of constitutional rights or other injury . . . ." *Id.,* at 321–322, 95 S.Ct. at 1000–1001 (emphasis added; Footnote omitted).

*See also Hall, supra,* 704 F.2d at 250. Therefore, to the extent that good faith is defined essentially in objective terms, if defendant Fleming did not know his conduct violated Bier's constitutional rights, then he is entitled to a good faith defense. For purposes of this inquiry we assume, without deciding, that Bier did suffer a constitutional deprivation without due process of law.

■ As indicated, the district court found the absence of good faith in concluding that Fleming drafted and signed the August 24th letter against the advice of legal counsel. However, we find the district court's conclusion unsupported by the record. Mr. George E. Lord, legal counsel for the Racing Commission, testified as follows:

Q. Handing you what has been identified as Defendants' Exhibit D–2, have you seen that document before, Mr. Lord?

A. Yes.

Q. Would you tell the Court what it is?

A. It is a proposed letter to be sent to Mr. Bier as a result of the conference that we have been discussing right here.

Q. Was that prepared after the telephone conference?

A. Or at the close of it. During it, yes.

Q. Did you prepare that document, yourself?

A. No.

Q. Do you know who did?

A. It would be my guess it would be Mr. Fleming.

Q. Now, how was that document presentd to you, for what purpose?

A. For my approval.

Q. Did you approve it as it was presented to you?

A. No.

Q. In what way did you disapprove it.

A. I instructed Mr. Fleming to delete the last line of the first paragraph, which reads: "by action taken by said commission on August 24, 1977." And as the document appears today, that is crossed out.

Q. After that correction was made, did you approve the language in that rough draft?

A. Yes.

Q. And did you indicate your approval on it?

A. Yes; it appears in the upper left-hand corner.

Q. And what does it say?

A. It says, "Draft OK GEL."

Q. Did you have a—

THE COURT: Excuse me. Wasn't that what the Commission actually did, though, in that phone call? Did they decide to revoke Mr. Bier's license?

THE WITNESS: They wanted to revoke it, and my advice to them was that they could not do that by phone call and they had to give him a hearing before it could be revoked. And that is why that last line was stricken from the notes.

This testimony indicates clearly that counsel believed that the content of the letter was consistent with his advice to the Commission and that Fleming's actions as Executive Secretary were consistent with the advice of counsel. Therefore, we hold that Fleming had reason to believe he was performing his official duty in a reasonable and appropriate manner and in good faith belief that his actions would not result in a deprivation of plaintiff's constitutional rights. We conclude that the district court erred in not granting Fleming the defense of qualified, good faith immunity.

Accordingly, the judgment of the district court is reversed and the cause remanded with directions to dismiss the complaint.

The costs of this appeal are taxed against the plaintiff-appellee, Arthur Lance Bier.