Herbert H. **ROBERTS,**
**Plaintiff-Appellant,**

v.

**LOUISIANA DOWNS, INC. and Vincent J. Bartimo, Individually and in his official capacity as President of Louisiana Downs, Defendants-Appellees.**

No. 83–4529.

United States Court of Appeals,
Fifth Circuit.

Sept. 24, 1984.

George M. Strickler, Jr., Ann Woolhandler, Michael G. Collins, New Orleans, La., Henry C. Walker, Shreveport, La., for plaintiff-appellant.

Lunn, Irion, Switzer, Johnson & Salley, Charles W. Salley, James B. Gardner, Roy S. Payne, Shreveport, La., for defendants-appellees.

Before CLARK, Chief Judge, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Herbert Roberts appeals from a trial court judgment dismissing his action under 42 U.S.C. § 1983. We reverse.

## I.

Herbert Roberts is a trainer of thoroughbred racehorses by profession. Prior to the events which gave rise to this case, Roberts was employed by Paradise Farms, of Longview, Texas, and regularly raced their horses at Louisiana Downs Racetrack in Bossier Parish, Louisiana. During that time Roberts had stalling privileges at the track, which meant that he was alloted some of the limited amount of stall space available on the grounds of the racetrack.

In August 1980, Roberts and a number of other individuals became disturbed that the management of Louisiana Downs allowed horses to race using a particular type of shoe. Roberts was one of a group of owners and trainers who later signed a petition requesting an investigation of this practice. In March 1981, Roberts was notified that the track was denying him stalling and racing privileges for the coming season. Roberts' racing privileges were later restored, but he was discharged by Paradise Farms as a result of his loss of stalling privileges. Roberts contacted the Louisiana Racing Commission concerning this matter, but was informed that the Commission did not review denials of stall space, as opposed to denials of racing privileges.

Roberts then brought this action for damages and injunctive relief against the racetrack under 42 U.S.C. § 1983, alleging that the track's action was in response to his signing the petition, and violated his right of free speech secured by the first and fourteenth amendments. In August 1983, the district court granted summary judgment for the racetrack on the ground that the "state action" required by § 1983 was not present. In this appeal, Roberts urges that the district court erred in its decision.

## II.

■ In determining whether a grant of summary judgment was appropriate, we apply the familiar principle that the evidence and any inferences to be drawn from it must be viewed in the light most favorable to the party opposing the motion, to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Coulter v. Texaco, Inc., 714 F.2d 467, 468 (5th Cir.1983). In this case, we cannot agree with the district court's finding that no material issue of fact exists as to the presence of state action.

The two basic requirements for conduct to be actionable under § 1983[1] are: (a) a deprivation of a right secured by the Constitution or federal law, (b) occurring under color of state law. Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978).

■ The Supreme Court has recognized a number of different types of situations in which the "under color of state law" or "state action" requirement is met.[2] For example, in Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961), the Court held that when the state was so heavily involved in an activity with a private party that it was in essence a joint participant, this "symbiotic relationship"

---

1. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

2. Section 1983 requires action taken "under color of any statute," etc.; the Fourteenth Amendment requires "state action." While theoretically distinct, the two concepts are treated as co-extensive for purposes of determining jurisdiction under § 1983. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 941–42, 102 S.Ct. 2744, 2757–58, 73 L.Ed.2d 482, 498 (1982).

was sufficient to make the actions of the private party attributable to the state. State action may also be present when powers "traditionally the exclusive prerogative of the state" are delegated to a private party. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). The required connection is present when the state has compelled an action or "provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state." *Blum v. Yaretsky*, 457 U.S. at 991, 102 S.Ct. at 2778, 73 L.Ed.2d at 537; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The application of the tests for state action is not mechanical, however. State action may manifest itself in a wide variety of forms, some of which do not fit neatly in any category. In essence, for a nominally private individual's conduct to meet the state action requirement, there must be a sufficiently close connection between the state and the challenged conduct for the actor to be treated as an agent of the state, or the conduct to be attributed to the state. *Blum v. Yaretzky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982); *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). This essentially factual determination is made by "sifting facts and weighing circumstances case by case" to determine if there is a sufficient nexus between the state and the particular aspect of the private individual's conduct which is complained of. *Sims v. Jefferson Downs, Inc.*, 611 F.2d 609, 611 (5th Cir.1980), citing *Burton v. Wilmington Parking Authority*, 365 U.S. at 722, 81 S.Ct. at 860, 6 L.Ed.2d at 45. The inquiry in this case, then, is whether state regulation and control of horseracing was so intimately involved with the decision to deny Roberts stall space that this action should be attributed to the state.

Horseracing in Louisiana is the subject of extensive state regulation. Racetracks in the state are privately owned, but the racing itself and many aspects of track management are governed by detailed regulations issued by the Louisiana State Racing Commission. The Racing Commission maintains a continuous presence at each track through racing stewards, officials who oversee the administration and enforcement of commission rules and policies. Stewards are paid by the management of each track, but they are an arm of the racing commission and are answerable directly to the commission. Stewards may override the management of the track in matters pertaining to racing.[3]

---

**3.** *See generally* Louisiana State Racing Commission, Rules of Racing 11–6.4, 11–6.5 (1978); La. Rev.Stat.Ann. §§ 4:147, 4:172 (West 1973).

§ 4:172 provides in part:
A. In the matters pertaining to racing, the orders of the steward supersede the orders of the officers and directors of the association and the stewards shall have supervision of the daily conduct of racing. The stewards have full authority to investigate, inspect, search and inquire into all matters under their supervision.
B. Should any case occur which may not be covered herein or by the Rules of Racing, it shall be determined by the Commission and implemented by the stewards but only insofar as such determination is consistent with justice, the best interest of racing and with powers and authority herein granted; and when no penalty is provided, the stewards of the meeting are hereby given authority to exercise their full power, recommending to the Commission the imposition of more severe penalties if, in their judgment, the penalty should be more drastic.

C. The stewards have general supervision over all personnel directly connected with racing and shall have access to all stands, weighing rooms, enclosures, etc., used for the purpose of racing and have the authority to determine all questions concerning entries and racing:
D. The stewards shall order ejected from the grounds of the association any improper or objectionable persons.
Rule of Racing 11–6.5 provides in part:
5.4 Stewards shall be responsible to the Commission and may be replaced by the Commission at any time for failure to perform their duties to the satisfaction of the Commission.
5.6 The stewards shall have and exercise the powers of supervision, control, and regulation of racing at each licensed race meeting on behalf of the Commission. By way of illustration and without limitation thereof, the powers of the stewards shall include:
A. Authority over all horses and all persons, licensed or unlicensed, on association grounds during a race meeting as to all matters relating to racing.

A number of other racing officials are also provided for by state statute or by Commission rule, including one who is designated the "racing secretary." [4] The Racing Commission rules specify that the other racing officials "shall serve only as long as approved by the Commission, and shall be under the supervision of the stewards." Louisiana State Racing Commission, Rules of Racing 11–6:4(4.2) (1978) (hereafter cited as "Rules of Racing"). Louisiana statutes also provide that stewards shall "have general supervision over all personnel directly connected with racing ..." La.Rev.Stat. Ann. § 4:172 (West 1973).

Allocation of stall space figures directly in this regulatory scheme in two places. The stewards of each track are required by Racing Commission rules to review applications for stall space and inform the management of the track of any undesirable persons applying.[5] One of the duties which the racing secretary is specifically directed to perform by the rules of racing is "assigning stall applicants such stabling as he may deem proper after consultation with the stewards ..." Rules of Racing 11–6:6(6.2)(D).

At Louisiana Downs, stalling decisions were in practice made by a "stalling committee" composed of the racing secretary, the chief of security, and three other individuals. No means of appeal from decisions regarding stall space is provided by statute or Racing Commission regulation. It is uncontested that the stalling commit-

tee made the decision to deny Roberts stall space, and that Bennett Parke, the racing secretary at Louisiana Downs, participated in that decision.

## IV.

▇ Louisiana Downs has earnestly argued that decisions regarding stalls are decisions made by the private management of Louisiana Downs, a private corporation, and have nothing to do with the state. They argue, and quite correctly, that the fact that a private actor is in a heavily regulated industry, such as horseracing, does not of itself suffice to make its actions under color of state law. *Jackson v. Metropolitan Edison Co.*, 419 U.S. at 351, 95 S.Ct. at 453. They also argue, again correctly, that the receipt of the substantial revenues by the state from the operation of the horseracing industry does not suffice to create a symbiotic relationship of the sort which makes a private individual's conduct under color of state law. *Fulton v. Hecht*, 545 F.2d 540, 543 (5th Cir.1977). While these contentions are correct, they do not adequately address the peculiar circumstances of this case, in particular the participation of the racing secretary in the decision.

▇ As the Supreme Court noted in *Jackson v. Metropolitan Edison*, "differences in circumstances beget differences in law." 419 U.S. at 358, 95 S.Ct. at 457, 42 L.Ed.2d at 488. Neither party has pointed

---

Consideration of provisions of the Rules of Racing is relevant since state action may, of course, be premised on rulings and regulations of administrative agencies. *Palmer v. Columbia Gas of Ohio*, 479 F.2d 153 (6th Cir.1973), *modified on other grounds* in *Turner v. Impala Motors*, 503 F.2d 607 (6th Cir.1974).

**4.** Louisiana State Racing Commission, Rule of Racing 11–6:6 provides in part:

6.1 The racing secretary shall discharge all duties, expressed or implied, required by the rules of racing and he shall report to the stewards all violations of the rules or regulations of the meeting.

6.2 The racing secretary shall be responsible for the programming of races during the race meeting, compiling and publishing condition books, assigning weights for handicap races,

and shall receive all entries, subscriptions, declarations, and scratches. Among the duties for which the racing secretary and his staff are responsible are:

\*   \*   \*   \*   \*   \*

D. Assigning stall applicants such stabling as he may deem proper after consultation with the stewards, and maintaining a record of arrival and departure of all horses stabled on association grounds.

**5.** Rules of Racing 11–6.5(5.8)(G) provides that one of the duties of the stewards is "to review stall applications and advise the association of undesirable persons, if any, among owners and trainers applying for stalls and provide the association with information pertaining to such undesirable persons."

to a case, nor has research uncovered any, precisely analogous to the present one, a not unexpected result in this factually oriented area. Two complementary elements in this case inform our decision. First, the particularly intrusive nature of Louisiana's regulation of horseracing, and second, the participation of the racing secretary, an official having functions directly under the control of both state officials and track management, in the decision to deny stalling.

The facts and holding of *Jackson v. Metropolitan Edison Co.* are not applicable to the case at hand. In *Jackson,* the utility's challenged termination policy was submitted to the Public Utility Commission as part of a rate increase package, and the PUC took no action to disapprove the policy. Indeed, as the Supreme Court noted, it was not clear that the policy had to be submitted to the PUC at all, or that the PUC had the power to disapprove it. 419 U.S. at 354–55, 95 S.Ct. at 455–56, 42 L.Ed.2d at 486. This obviously differs from the specific, affirmative content of the state regulation of the challenged activity in the present case. Further, the intimate involvement in the day-to-day management of the racetrack's activities and the actual supervision of the employee involved here distinguish this case from *Metropolitan Edison.*

The regulatory provisions involved in *Blum v. Yaretsky* likewise demonstrate a lesser degree of state involvement than those involved in this case. *Blum* involved a challenge to summary transfer of Medicare recipients from one institution to another. Medicare regulations required that participating institutions set up committees composed of *private* physicians to evaluate the level of care needed by patients, and encouraged transfer to institutions in line with the level of care required. The Supreme Court found that this regulatory scheme did not impart an element of state action, because "[t]hose decisions ultimately turn on medical judgments made by private parties according to professional standards that are not established by the state." 457 U.S. at 1009, 102 S.Ct. at 2788,

73 L.Ed.2d at 549. The decisions challenged in *Blum* did not involve an individual having, for purposes of those decisions, the characteristics of a state official, such as the racing secretary in this case.

*Fulton v. Hecht,* which involved a situation similar to the present one, is also readily distinguishable. We held in that case that the refusal of a Florida dog racing club to renew the booking contract of a dog owner was not state action, despite heavy state regulation of the dog racing industry and the receipt of substantial revenue by the state from dog racing. In reaching this conclusion, however, we noted:

> The evidence is that the State of Florida—except for the requirement that a dog racer must have a state license to run his dogs—does not regulate booking contracts between the Kennel Club and the dog owners.

545 F.2d at 543.

The presence of state involvement in stall allocation and participation by a state racing official in the allocation decision remove this case from *Fulton v. Hecht's* ambit.

The cases involving horseracing tracks are illuminating, although none present precisely the same situation as this case. Our decision in *Sims v. Jefferson Downs, Inc.* involved an appeal from a grant of summary judgment in a § 1983 case based on denial of access to a racetrack. In that case, however, we held that uncontradicted allegations that the racing stewards, admittedly state officials, participated in the decision raised a material question of fact with regard to the existence of state action. 611 F.2d at 612–13. Since the stewards did not participate in the decision to deny stalling privileges to Roberts, *Sims* does not answer the question posed by this case.

In *Fitzgerald v. Mountain Laurel Racing, Inc.,* 607 F.2d 589 (2d Cir.1979), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980), the Second Circuit held that the participation of two state racing officials in a decision to deny a trainer stall space was sufficient to make the decision

one under color of state law, even though the action was taken pursuant to a stall agreement which could be terminated at will by track management. The officials involved were the "presiding judge", analogous to the steward, and the "racing secretary", an official identical in all essential respects to his Louisiana namesake.[6] These officials confirmed that the plaintiff had violated a Racing Commission rule, which the track cited as its reason for exercising the termination clause. The racing secretary then delivered the news to the ousted trainer. The track argued that the exercise of the clause was an exercise of its common law, proprietary rights and could not constitute state action. The Second Circuit disagreed, based on the participation of racing officials and the use of a state rule violation as the reason for exercise of the clause.

*Fitzgerald* differs from the present case in that a "steward" was involved, although in a rather attenuated fashion, and in that the track's action was ostensibly based on violation of a state regulation. It is significant for our analysis, however, that the Second Circuit thought a "critical" feature of the case was that "the presiding judge and the racing secretary, *acting in their official capacities, participated* in the decision to expel Fitzgerald." 607 F.2d at 599 (emphasis in original). The official conduct involved in that case was confirming that Racing Commission rules had been violated, but the conduct in this case, as we discuss below, is also "official."

*Bier v. Fleming,* 717 F.2d 308 at 309 (6th Cir.1983) and *Heflin v. Kentucky State Racing Commission,* 701 F.2d 599 (6th Cir. 1983), on which Louisiana Downs also relies, are not persuasive on the point we now address. In *Bier,* a decision made by the management of a racetrack to exclude a trainer, with no active participation by state racing officials, was held not under color of state law. 717 F.2d at 311. In *Heflin,* the decision by a Kentucky racetrack to deny stall privileges was characterized as a private one on the basis that under Kentucky's regulatory scheme stalling is a matter left to the discretion of track management. 701 F.2d at 600. *Heflin* does not detail the facts surrounding the challenged stalling decision, nor does it discuss the Kentucky regulatory scheme. The Kentucky scheme is practically identical to Louisiana's, but we cannot accept the premise that the broad, conclusory holding in *Heflin* controls the concrete factual situation we have before us.

Louisiana Downs urges that the racing secretary is a private employee, answerable only to track management, and that allocation of stalls is a part of its proprietary rights, having no connection to the state. Citing the facts that the secretary is selected by the track (although subject to the approval of the Racing Commission) and paid by the track, they state that it would "beg reality" to call the secretary a state official. Indeed, in performing some of his job functions, the racing secretary no doubt functions as a private employee. In the narrow context of this case, however, the racing secretary's function is so bound about and permeated by the regulatory authority of the state as to raise a serious question of fact whether his actions can be attributed to the state.

The racing secretary is assigned specific administrative duties. One of these is the allocation of stall space, to be carried out after consultation with the stewards. Further, he is required to perform "such other duties as may be assigned to him by the Rules of Racing and/or the Commission." La.Rev.Stat.Ann. § 4:143(10) (West 1973). In light of these facts, that the racing secretary is selected and paid by the track

---

6. The presiding judge, according to the court, "is charged by the racing commission with the task of enforcing the rules and regulations of the commission, supervising all other licensed race officials, and with rendering daily records to the commission of the activities and conduct of the race meetings." 607 F.2d at 592. The racing secretary "performs certain administrative duties, specifically fixed by the racing commission, including the establishing of standards for horses." *Id. See* Pennsylvania State Harness Racing Commission, Rules and Regulations Ch. 6, §§ 10–12, 23 (1977).

is not determinative of his status. Indeed, two racing stewards at each track are chosen by the track's management, and all are paid by the track. This fact does not alter their status as state officials.

A critical point, and one which Louisiana Downs glosses, is that the racing secretary is by statute, and by Racing Commission regulation, under the supervision of the stewards. Complaints concerning racing officials are to be made directly to the racing stewards, not to track management. Rules of Racing 11–6.2(2.4). For purposes of summary judgment, we may presume this includes complaints concerning assignment of stalls, since this is one of the assigned duties of the racing secretary. This scheme, necessarily entails that, contrary to Louisiana Downs' assertions, the racing secretary is answerable to the stewards—state officials—and that his actions in areas in which the state's interest is evidenced by specific assignment of duties may be considered to be pursuant to authority emanating from them. Essential to this is the fact of the stewards' intimate and continuous involvement in the actual day to day management of racing-related activities at the track.

Something more is present in this case than simply extensive regulation of an industry, or passive approval by a state regulatory entity of a decision by a regulated business. An official in a position created by statute is required to perform a duty in a specific area. The duty is performed under the supervision of state officials who are continuously on the situs of the regulated business, and have the power to override decisions of the management of the regulated business. We do not doubt that many of the actions of the racetrack and its employees are no more than private business decisions. In the area of stalling, however, state regulation and involvement is so specific and so pervasive that decisions may be considered to bear the imprimatur of the state.

## CONCLUSION

We again emphasize that state action inheres in concrete situations, not in generalizations. We do not today hold that the state and Louisiana Downs are in such a relationship that all acts of the track constitute state action, nor that all acts of the racing secretary constitute state action. We do not hold that the actions of any individual in a position which a regulated business is required by law to maintain constitute state action. We hold only that in the complex of facts and regulations present at this stage of the proof in this case, there is a sufficient nexus between the conduct complained of and the state to attribute the conduct to the state. Summary judgment was therefore inappropriate.

REVERSED and REMANDED.