**Charles CRISSMAN, Wendy Crissman and Christine Crissman, Plaintiffs,**

v.

**DOVER DOWNS, INC., Defendant.**

**No. Civ.A. 99–755–RRM.**

United States District Court, D. Delaware.

Feb. 17, 2000.

 

Noel E. Primos, Jeffrey J. Clark, Schmittinger & Rodriguez, P.A., Wilmington, DE, for plaintiffs.

Thomas P. Preston, Duane, Morris & Heckscher, LLP, Wilmington, DE, for defendant.

### OPINION

McKELVIE, District Judge.

This is a civil rights case. Plaintiffs Charles Crissman, Wendy Crissman and Christine Crissman (collectively, the "Crissmans") are Delaware citizens who own and train harness racing horses. Defendant Dover Downs, Inc. ("Dover Downs") is a Delaware corporation that operates a harness racing facility in Dover, Delaware.

On November 5, 1999, the Crissmans filed a complaint under 42 U.S.C. § 1983, alleging that Dover Downs violated their Fourteenth Amendment rights to due process by excluding them from the Dover Downs harness racing facility. The Crissmans moved for a preliminary injunction. On November 9, 1999, Dover Downs filed a cross-motion for summary judgment alleging that there is no evidence that Dover Downs acted under color of state law as required in a section 1983 action.

The parties have completed briefing on the motions and the court heard oral argument on November 29, 1999. This is the court's decision on the motions.

### I. FACTS AND PROCEDURAL BACKGROUND

The court draws the following facts from the affidavits, documents and deposition transcripts submitted by the parties.

#### A. The Parties

##### 1. The Crissman Plaintiffs

Plaintiffs Charles Crissman, Wendy Crissman and Christine Crissman are Delaware citizens who derive all of their earnings from harness racing. The Crissmans are licensed by the Delaware Harness Racing Commission (the "Commission") as owners and trainers of harness racing horses.

## 2. Defendant Dover Downs

Defendant Dover Downs is a subsidiary of Dover Downs Entertainment, Inc., the owner of several horse and automobile racetracks throughout the United States. Dover Downs operates a harness racing facility in Dover, Delaware and is duly licensed by the Commission. Additionally, Dover Downs operates video lotteries at its harness racing facility, as authorized by 29 Del.C. § 4819.

Harrington Raceway in Harrington, Delaware is the only other harness racing facility that is currently authorized by the Commission.

## B. Exclusion of the Crissmans

In October 1997, Charles B. Lockhart, Executive Assistant to the President of Dover Downs, decided to exclude the Crissmans from racing at Dover Downs. Lockhart prepared a one sentence letter which the President of Dover Downs, Denis McGlynn, signed and sent to each of the Crissmans. "This letter is to inform you that as of this date you are not welcome on the premises of Dover Downs nor will Dover Downs be accepting any horses owned or trained by you."

At his deposition, Lockhart testified that he decided to exclude the Crissmans in part because he heard that Charles Crissman was under investigation by the state for false ownership of horses. Lockhart also testified that he heard rumors that Crissman had financial problems and that his horses had tested positive for drug use. Lockhart stated, "it was not my job to prove that each and every one of those [rumors] were true. It really made no difference whether they were. We made a decision based on what we believed was the best interest of Dover Downs."

In November 1997, a state investigator named Robert Collison asked Lockhart if Dover Downs had excluded the Crissmans from its facility. Lockhart testified that he told Collison the Crissmans had been excluded. Collison then informed Lockhart that Charles Crissman was under investigation by the Commission.

In addition to the Crissmans, at any given time, there are approximately 27 other individuals that Dover Downs excludes from its harness racing facility. Dover Downs reports its decisions to exclude individuals to the Commission in accordance with Commission policy. Although excluded from harness racing at Dover Downs, the Crissmans retain their licenses from the Commission to own and train harness racing horses in Delaware.

## C. The Lawsuit

After trying unsuccessfully to get Dover Downs to reinstate their racing privileges, on November 5, 1999, the Crissmans filed this action under 42 U.S.C. § 1983 for injunctive and monetary relief.[1] The Crissmans allege that Dover Downs violated their rights to due process under the Fourteenth Amendment by excluding them from the Dover Downs harness racing facility.

On the same day that the Crissmans filed their complaint, they moved for a temporary restraining order enjoining Dover Downs from excluding them from the harness racing facility. On November 9, 1999, the court heard oral argument on the motion. The court found that the Crissmans were unlikely to prevail on the merits because the Crissmans failed to present evidence that Dover Downs acted under color of state law, as required under 42 U.S.C. § 1983. The court denied the motion for a temporary restraining order.

The Crissmans also moved for a preliminary injunction to enjoin Dover Downs from excluding them from the harness racing facility. On November 9, 1999, Dover

---

1. The Crissmans originally filed their complaint against the parent corporation, Dover Downs Entertainment, Inc. On December 20, 1999, the court granted a stipulation by the parties to allow the Crissmans to amend their complaint. Dover Downs is the sole defendant on the amended complaint.

Downs filed a cross-motion for summary judgment, alleging that there is no evidence of state action. Dover Downs contends that as a private racetrack owner, it retains the ability to exclude participants and patrons from its facility.

On November 29, 1999, after the Crissmans had taken certain discovery, the court heard oral argument on both motions. After the hearing, the court invited the Crissmans to submit additional evidence in response to the motion for summary judgment in order to show that Dover Downs acted under color of state law for purposes of the Fourteenth Amendment. On December 15, 1999, the parties submitted a Stipulation of Undisputed Facts.

## II. *DISCUSSION*

### A. *Legal Standard for Summary Judgment*

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of demonstrating the absence of material issues of fact. *Id.* at 323, 106 S.Ct. 2548. When deciding a motion for summary judgment, the court views the facts, and all permissible inferences from those facts, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Where the record could not lead a reasonable jury to find for the non-moving party, disposition by summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. *Did Dover Downs Act Under Color of State Law?*

■ To maintain a cause of action under 42 U.S.C. § 1983, the Crissmans must establish that Dover Downs violated their constitutional rights and that the violation was committed under color of state law. 42 U.S.C. § 1983.[2] Private conduct may amount to state action in two instances. First, where the state has "so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant," this "symbiotic relationship" is sufficient to make the actions of a private party attributable to the state. *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Second, state action may exist when "there is a sufficiently close nexus between the State and the challenged action" that the private party's action "may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

In this case, the Crissmans allege that the actions of Dover Downs are attributable to the state under both the symbiotic relationship test and the close nexus test.

---

**2.** 42 U.S.C. § 1983. Civil action for deprivation of rights.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

### 1. *Symbiotic Relationship*

■ The Crissmans argue that the harness racing in Delaware is a joint venture between the Commission and Dover Downs. The Crissmans point to the extensive regulation of harness racing in Delaware which they argue "inextricably intertwines" Dover Downs and the Commission. Moreover, the Crissmans contend that Dover Downs acted under color of state law because the state has a direct financial stake in video lotteries at Dover Downs that generate revenue for the state each year.

Dover Downs counters that there is no evidence of state action. Dover Downs argues that as a private racetrack owner, it retains the ability to exclude participants and patrons from its facility. For purposes of the summary judgment motion, Dover Downs does not dispute the facts set forth by the Crissmans. Dover Downs concedes that harness racing at Dover Downs is extensively regulated by the state and produces significant revenue for the state. Dover Downs contends, however, that those facts are not sufficient to establish state action under the symbiotic relationship test.

The Supreme Court first articulated the symbiotic relationship test in *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In that case, a private restaurant located in a state-owned building refused to serve a black customer. The Court held that there was state action in part because the restaurant was a lessee of the state agency that owned the building. In addition, the state agency was responsible for upkeep and maintenance of the building and it provided heat and gas service to the restaurant. The Court stated:

> Addition of all these activities, obligations and responsibilities of the [state agency], the benefits mutually conferred, together with the obvious fact that the restaurant is operated as an integral part of the public building devoted to a public parking service, indicates that de-

gree of state participation and involvement in discriminatory action which it was the design of the Fourteenth Amendment to condemn.

365 U.S. at 724, 81 S.Ct. 856. The Court held that the state had "so far insinuated itself into a position of interdependence with [the restaurant] that it must be recognized as a joint participant." *Id.*

In this case, the Commission has not "so far insinuated itself into a position of interdependence" with Dover Downs that it must be recognized as a joint participant in harness racing. Dover Downs is a privately-owned harness racing facility. While harness racing is subject to substantial regulation, that fact alone does not make Dover Downs a state actor. *See Jackson*, 419 U.S. at 350, 95 S.Ct. 449 ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment."). Moreover, the revenues generated by the state from harness racing and video lotteries do not create a symbiotic relationship of the sort which makes Dover Downs' conduct state action. *See Roberts v. Louisiana Downs, Inc.*, 742 F.2d 221, 225 (5th Cir.1984) (finding that receipt of substantial revenues by the state from horse racing does not create a symbiotic relationship). Therefore, the actions of Dover Downs do not qualify as state action under the symbiotic relationship test.

### 2. *Close Nexus*

■ The Crissmans also contend that Dover Downs acted under color of state law because there is a sufficiently "close nexus" between the Commission and harness racing. The Crissmans argue that Lockhart and Collison, the state official who was investigating Crissman, conspired to exclude the Crissmans from harness racing. Furthermore, the Crissmans contend that the Commission exercises sufficient control over harness racing through its regulatory power to make the actions of

Dover Downs attributable to the state for Fourteenth Amendment purposes.

Dover Downs counters that the close nexus test is not met in this case because there is no evidence that state officials participated in the decision by Dover Downs to exclude the Crissmans. Dover Downs argues that it did not consult with the Commission regarding its decision to exclude the Crissmans. Finally, Dover Downs contends that the state's regulation of harness racing is not sufficient evidence of state action under the close nexus test.

The Supreme Court established the close nexus test in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In that case, Jackson's electricity service was terminated by Metropolitan Edison because Jackson had not paid her electric bills. Jackson claimed that she was entitled to notice and a hearing under 42 U.S.C. § 1983 before her service could be terminated. The Court acknowledged that Metropolitan Edison was a heavily regulated, privately owned utility, enjoying at least a partial monopoly as an electricity provider and that it elected to terminate Jackson's service in a manner which the state found permissible. 419 U.S. at 358, 95 S.Ct. 449. Nonetheless, the Court held that these factors were insufficient to establish a "close nexus" between the utility and the state such that the utility's action may be attributable to the state. *Id.*

In this case, the Crissmans have not presented evidence that the Commission specifically authorized or directed Dover Downs to exclude the Crissmans. Lockhart acknowledged that a state official told him that Crissman was under investigation but Lockhart testified that he made the decision to exclude the Crissmans before he spoke to Collison. There was no direct communication between the Commission and Dover Downs concerning the exclusion. To this day, the Commission has not taken disciplinary action against the Crissmans.

Admittedly, the Commission has extensive regulatory control over harness racing in Delaware. Nonetheless, the *Jackson* Court held that regulatory control, even if "extensive and detailed" does not establish a "close nexus" between the private entity and the state, such that the private entity's action may be attributable to the state. 419 U.S. at 350, 95 S.Ct. 449. Furthermore, mere licensing by the state is not sufficient to establish state action. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 171–72, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1072). Therefore, the court finds that the actions of Dover Downs do not qualify as state action for purposes of the Fourteenth Amendment.

As set forth above, the Crissmans have failed to offer evidence that Dover Downs acted under color of state law as required for a section 1983 claim. Therefore, the court will grant summary judgment in favor of Dover Downs on the claims in the Crissmans' amended complaint.

The court will issue an order in accordance with this opinion.