The summary judgment of the district court in favor of the defendants is AFFIRMED.

7. We do not mean to imply that other, equally reliable, indicia of guilt would not be adequate.

8. Hatteras has not urged that the procedural protections made available to her after the ter-

Harold DAIGLE, Individually and Kerry Daigle, Individually and as Administrator of the Estate of Pearl Venable Daigle, Plaintiffs-Appellants,

v.

OPELOUSAS HEALTH CARE, INC., and/or Southeastern Health Care, Inc., et al., Defendants-Appellees.

No. 85–4088

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Oct. 30, 1985.

mination of her service are constitutionally inadequate. We therefore express no opinion on that matter.

Thomas J. DeJean, Felix A. DeJean, III, Opelousas, La., for plaintiffs-appellants.

Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, James L. Pate, Lafayette, La., for defendants-appellees.

Before RUBIN, JOHNSON and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The plaintiffs in this civil rights action under 42 U.S.C. § 1983 seek to recover for the death of their grandmother as an alleged result of beatings sustained in a nursing home. The district court dismissed the action for want of federal jurisdiction. Although we find that the district court had jurisdiction, we affirm the dismissal under Rule 12(b)(6), holding that the plaintiffs failed to demonstrate the state action or nexus that is a prerequisite to their claim for relief.

## I.

Pearl Venable Daigle lived in a nursing home operated by Opelousas Health Care,

Inc. Her grandchildren charge that she was beaten by an employee of the company and that her neglected and untreated injuries caused her death. In their complaint, they alleged that the fatal beating was given under color of state law in violation of Daigle's civil rights. They sought damages under § 1983 from Opelousas Health Care; its parent, Southeast Health Care, Care, Inc.; Etta Pearl Livings, the nurse who allegedly administered the beating; her supervisor, Ruth Stelly; and their collective insurer. The Louisiana Department of Health and Human Resources, also joined as a defendant, was dismissed from the suit when the plaintiffs failed to prosecute their action against it.

The defendants answered and filed a motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim on which relief could be granted.

The plaintiffs opposed these motions in a response addressed primarily to the question whether these defendants had acted under color of state law. The plaintiffs argued that, as a health care provider, Opelousas Health Care was licensed and extensively regulated by the state and that it received 90 percent of its revenues from the state through Medicare and Medicaid reimbursements. They claimed that Opelousas Health Care's "woefully contrived procedure" concerning notification of a physician and next of kin in the event of an emergency led to "a complete breakdown [in] the care of Mrs. Daigle following the beating she sustained." This and other delinquent procedures, they contend, were nonetheless "certified by the State of Loui-

siana" and were therefore "deficient with the knowledge of the State."

The district court found both Opelousas Health Care and Southeastern Health Care to be private companies and Ruth Stelly and Etta Pearl Livings to be private individuals. These findings are consistent with the complaint and are unchallenged on appeal. The court found that the corporations' receipt of Medicare and Medicaid funds alone was insufficient to attribute their actions to the State, and that the State's licensing procedures were not sufficient to make the acts of Opelousas Health Care or of its employees state action. It found that the "state neither encouraged nor coerced the nursing home to violate state required procedures," nor had the home "assumed a public function or exercised traditional State powers." Determining that the complaint presented no ground adequate to support a § 1983 action, the court dismissed the claim for lack of subject matter jurisdiction.

The sole issue raised on appeal, as stated by the Daigles, is "[w]hether a nursing home that receives funding from the state and is subject to state regulations can be sued for damages under Section 1983."

## II.

■ Whether a federal court has jurisdiction to decide a case and whether a plaintiff has a cause of action under a federal statute are distinct inquiries that must be addressed separately.[1] As the United States Supreme Court,[2] this court,[3] and the major commentators[4] have all

---

1. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Nicol v. Gulf Fleet Supply Vessels, Inc.,* 743 F.2d 289, 293–94 (5th Cir.1984). *See Montana-Dakota Utilities Co. v. Northwestern Public Service Co.,* 341 U.S. 246, 249, 71 S.Ct. 692, 694, 95 L.Ed. 912, 917 (1951); *Espinoza v. Missouri Pacific Railway Co.,* 754 F.2d 1247, 1248 n. 1 (5th Cir.1985).

2. *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 615–16, 99 S.Ct. 1905, 1915, 60 L.Ed.2d 508 (1979); *Hagans v. Lavine,* 415 U.S. 528, 535, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577, 586 (1974); *Examining Board of Engineers v. Flores De Ote-*

ro, 426 U.S. 572, 582–83, 96 S.Ct. 2264, 2272, 49 L.Ed.2d 65, 73–74 (1976).

3. *Tyler v. Pasqua,* 748 F.2d 283, 285 (5th Cir. 1984); *Hart v. Walker,* 720 F.2d 1436, 1439 n. 2 (5th Cir.1983); *Mitchell v. Johnston,* 701 F.2d 337, 344 (5th Cir.1983); *Walsh v. Louisiana High School Athletic Association,* 616 F.2d 152, 155–56 (5th Cir.), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1980).

4. J. Moore, W. Taggart & J. Wicker, 7 Moore's Federal Practice 526–29 (1982); *see* 13 C. Wright & A. Miller & Cooper, Federal Practice and Procedure, § 3573 at 194 (1984).

pointed out, 42 U.S.C. § 1983 is not a jurisdictional statute and, therefore, does not give federal courts the power to decide claims that arise under it. Conversely, the failure to present an adequate § 1983 claim does not strip the court of jurisdiction unless the claim is clearly immaterial, frivolous, and wholly insubstantial.[5] Jurisdiction of civil rights actions is instead conferred by 28 U.S.C. § 1343, which gives district courts original jurisdiction "of any civil action authorized by law to be commenced by any person ... to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights...."

■ This court, consistent with the great weight of legal authority, has held that when a defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case.[6] Moore writes:

The jurisdictional facts are often intertwined with the merits of a claim. For example, if a plaintiff's constitutional claim is found wanting ... it could be argued that the plaintiff has failed to present a federal question and thus subject matter jurisdiction is absent. However, the courts have uniformly held that in such instances the preferable practice is to assume that jurisdiction exists and proceed to determine the merits of the

claim pursuant to [Rule 12] subdivision b(6) or Rule 56.[7]

As the Supreme Court wrote in *Bell v. Hood*

Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, their dismissal of the case would be on the merits, not for want of jurisdiction.[8]

In dicta, we have said that, "[b]ecause of the phrase 'civil action authorized by law,' section 1343 jurisdiction is unavailable in the absence of an appropriate cause of action."[9] On one occasion, we have repeated this rationale when directing a district court to change a dismissal for failure to state a cause of action under the civil rights statute to dismissal without prejudice.[10] These observations are, however, inconsistent with the well established distinction between subject matter jurisdiction and pleading a claim for which substantive relief may be granted.

■ The Daigles' complaint stated a claim on its face and, "having alleged a valid section 1983 action, the plaintiffs successfully invoked the district court's jurisdiction...."[11] "Our jurisdictional inquiry

---

5. *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939, 943 (1946); *Niles v. University Interscholastic Athletic League*, 715 F.2d 1027, 1029 (5th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1289, 79 L.Ed.2d 691 (1984); *Laurenzo v. Mississippi High School Activities Association*, 662 F.2d 1117, 1119 (5th Cir.1981); *Walsh v. Louisiana High School Athletic Association*, 616 F.2d 152, 156 (5th Cir.), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1980).

6. *Reeves v. Guiffrida*, 756 F.2d 1141, 1143 (5th Cir.1985); *Carpenters Local v. Pratt-Farnsworth*, 690 F.2d 489, 499 n. 4 (5th Cir.1982), *cert. denied,* — U.S. —, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); *Fragumar Corp. v. Dunlap*, 685 F.2d 127, 128 (5th Cir.1982); *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

7. 2 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 12.07[2.–1] at 12–50 (1982).

8. 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939, 943 (1946).

9. *Campbell v. Gadsden County District School Board*, 534 F.2d 650, 653 n. 3 (5th Cir.1976).

10. *Carter v. Telectron, Inc.*, 554 F.2d 1369 (5th Cir.1977).

11. *Mitchell v. Johnston*, 701 F.2d 337, 344 (5th Cir.1983). *See also Tyler v. Pasqua*, 748 F.2d 283 (5th Cir.1984); *Fontana v. Barham*, 707 F.2d 221, 225 (5th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984); *Lewis v. Knutson*, 699 F.2d 230, 237 (5th Cir.1983); *Redd v. Lambert*, 674 F.2d 1032, 1035 (5th Cir.

is 'limited to observing whether the complaint is drawn to seek recovery under a federal statute [or the Constitution]....' "[12] As the United States Supreme Court wrote in *Romero v. International Terminal Operating Co.,*[13] the assertion of a claim under a federal statute "alone is sufficient to empower the District Court to assume jurisdiction over the case and determine whether, in fact, the Act does provide the claimed rights."[14] This circuit has similarly held that a court should not render what is, in effect, a judgment on the merits of a claim in the name of a jurisdictional inquiry. Jurisdiction is to be based on the allegations of the complaint. The well pleaded complaint is the key to the federal courthouse.

██ Whether a dismissal is for want of jurisdiction, for failure to plead a claim, or for the failure to prove a genuinely disputed material fact is significant for more than technical reasons. A dismissal for want of jurisdiction bars access to federal courts and is *res judicata* only of the lack of a federal court's power to act. It is otherwise without prejudice to the plaintiff's claims, and the rejected suitor may reassert his claim in any competent court.[15] If, on the other hand, a plaintiff's complaint fails to state a claim, he may request an opportunity to amend and it will be liberally granted.[16] Once final, however, such a dismissal operates as *res judicata* of the claim alleged and of other claims that might have been asserted.[17] Summary judgment is a judgment on the merits; it has the same effect as if the case had been tried by the party against whom judgment is rendered and decided against him.

The district court, in effect, dismissed the complaint for failure to state a claim on which relief could be granted. Taking all allegations of the complaint as true, the court held that, as a matter of law, they were insufficient to establish the state-action nexus necessary to establish a claim under § 1983. Because, in addition to the jurisdictional objection, a motion to dismiss was properly brought before the district court, we affirm the reasoning of the district court and dismiss the suit under Rule 12(b)(6).

### III.

██ The Daigles' complaint fails because § 1983 protects only against deprivations of civil rights that are "under color of state law." All of the defendants to this action are private persons or privately owned corporations. Under these circumstances, a general state involvement with the corporation or industry is not sufficient to support a claim. "[T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."[18] The involvement must be directly related to the action

---

1982); *Suthoff v. Yazoo County Development Commission,* 637 F.2d 337 (5th Cir.1981), *cert. denied,* — U.S. —, 104 S.Ct. 2389, 81 L.Ed.2d 347 (1983).

**12.** *Holy Cross College v. Louisiana High School Athletic Association,* 632 F.2d 1287, 1289 (5th Cir.1980) (quoting *Spector v. L Q Motor Inns, Inc.,* 517 F.2d 278, 281 (5th Cir.1975) (brackets added by court).

**13.** 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

**14.** *Id.* at 359, 79 S.Ct. at 473.

**15.** Fed.R.Civ.P. 41(b); *Williams v. Dallas County Commissioners,* 689 F.2d 1212, 1215 (5th Cir.

1981), *cert. denied,* 461 U.S. 935, 103 S.Ct. 2102, 77 L.Ed.2d 309 (1983).

**16.** Fed.R.Civ.P. 15(d); 2 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 12.07[2.–5] at 12–72 (1982); 3 Moore's Federal Practice ¶ 15.10 at 15–140 (1982). *See, e.g., Hines v. Wainwright,* 539 F.2d 433, 434 (5th Cir.1976).

**17.** 2 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 12.07[2.–5] at 12–63 (1982).

**18.** *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477, 484 (1974); *Roberts v. Louisiana Downs, Inc.,* 742 F.2d 221, 224 (5th Cir.1984).

that gives rise to the § 1983 claim.[19] State action can be found "only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains."[20] A state is not responsible for a private party's decisions unless it "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."[21] The state's role must be active; approval or acquiescence in a private party's actions is not enough.[22]

In *Roberts v. Louisiana Downs, Inc.*,[23] we held that a denial of stalling privileges by a privately-owned race track did constitute state action. This result was not based only on passive state regulation of the racing industry. In *Roberts*, state employees worked on the racetrack premises and were involved in the day-to-day management of the track. More important, the person authorized to make the allegedly illegal decision was directly answerable to a state official. These circumstances were sufficient to justify attributing responsibility for that decision to the state. The Daigles have not alleged any comparable nexus between state regulation of the nursing home industry and the events that led to the death of their grandmother.

■ The Daigles assert that the state's investigation of the nursing home, six months prior to the incident in question, somehow constituted "sufficient state action to invoke section 1983." They do not explain or cite authority to support this argument. They seem to assert that state funding and the state's negligent supervision of Opelousas Health Care made the acts of its employees state action. The existence of state regulation and the receipt of state funding, however, do not necessarily create state action. The Supreme Court firmly rejected this syllogism in *Flagg Brothers, Inc. v. Brooks* stating that "[a] state's mere acquiescence in a private action [does not convert] that action into that of the state."[24] As the Seventh Circuit has pointed out, "The courts ... have uniformly dismissed claims of state action grounded merely on governmental funding and regulation where neither has fostered the challenged activities of private health care facilities ..."[25]

The Supreme Court recently reaffirmed this principle in *Blum v. Yaretsky*.[26] The Court found no state action in the patient-transfer decisions of a nursing home that was extensively regulated and that received more than ninety percent of its operating support from the state. Similarly, in *Rendell-Baker v. Kohn*,[27] the court held that the hiring decisions of a school that received between 90 and 99 percent of its operating budget from public funds and was subject to detailed regulations by the state were not state action.

■ Finally, the Daigles allege in their complaint that Opelousas violated state regulations prohibiting the abuse and neglect of nursing patients. The violation of a state regulation, by definition, cannot be carried out "under color of state law," unless conspiracy or direct complicity of state officials is shown. None has been alleged.

For these reasons the judgment is AMENDED to a dismissal for failure to state a claim under § 1983 according to

---

**19.** See *Greco v. Orange Memorial Hospital Corp.*, 513 F.2d 873, 882 (5th Cir.), *cert. denied*, 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975).

**20.** *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534, 546 (1982) (emphasis in original).

**21.** *Id.*

**22.** *Id.* at 1004–05, 102 S.Ct. at 2786.

**23.** 742 F.2d 221 (5th Cir.1984).

**24.** 436 U.S. 149, 164, 98 S.Ct. 1729, 1737, 56 L.Ed.2d 185 (1978).

**25.** *Musso v. Suriano*, 586 F.2d 59, 62 (7th Cir. 1978), *cert. denied*, 440 U.S. 971, 99 S.Ct. 1534, 59 L.Ed.2d 788 (1979).

**26.** 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982).

**27.** 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).

Fed.R.Civ.P. 12(b)(6), without prejudice to any cause of action the plaintiffs may have under state law, and, as thus amended, AFFIRMED.