In re BILOXI CASINO BELLE INCORPORATED.

CHARLES N. WHITE CONSTRUCTION COMPANY, Plaintiff,

v.

MRA, LTD., d/b/a Casino Belle of Tunica; et al., Defendants.

Bankruptcy No. 94-0853SEG.
Adv. No. 940944SEG.

United States Bankruptcy Court,
S.D. Mississippi,
Southern Division.

Jan. 10, 1995.

---

William H. Leech, Samuel C. Kelly, Jackson, MS, for Charles N. White Constr. Co.

Jeff D. Rawlings, Jackson, MS, Ellen Werther, New York City, for debtor.

T. Glover Roberts, Dallas, TX, for Unsecured Creditors Committee.

Mark N. Parry, New York City, Henry E. Chatham, Jr., Jackson, MS, for First Trust Nat. Ass'n.

Andrew J. Kilpatrick, Jr., P.A., Jackson, MS, for Ferguson Enterprises, Inc.

*MEMORANDUM OPINION AND ORDER*

EDWARD R. GAINES, Bankruptcy Judge.

On November 2, 1994, the plaintiff, Charles N. White Construction Company ("White Construction"), filed a Motion for Summary Judgment on its Complaint for Declaratory Judgment against the defendants listed herein. White Construction seeks a declaration in its favor that (1) the Biloxi Belle II Casino and the Southern Belle Casino do not constitute "vessels" for purposes of federal admiralty and maritime matters and the Ship Mortgage Act, 46 U.S.C. § 30101 *et seq.* and (2) First Trust National Association ("First Trust"), a defendant herein, does not possess a first preferred ship/fleet mortgage on the Biloxi Belle II Casino and the Southern Belle Casino pursuant to the Ship Mortgage Act, 46 U.S.C. § 30101 *et seq.*

On November 23, 1994, First Trust filed its Cross–Motion for Summary Judgment and Opposition to White Construction's Motion for Summary Judgment, without supporting affidavits. Also on November 23, 1994, the Official Committee of Unsecured Creditors filed its Response in Support of White Construction's Motion for Summary Judgment, likewise without supporting affidavits. Finally, on December 2, 1994, the Debtor, Biloxi Casino Belle, Incorporated, filed its Response in Support of White Construction's Motion for Summary Judgment, with a supporting Affidavit of Neal Miller.

The Court hereby finds that the following facts are undisputed:

### FINDINGS OF FACT

1. On or about August 1, 1993, Charles N. White Construction Company contracted to construct alterations and improvements to four barges, thereby converting them into a floating, dockside casino known as the Southern Belle. See Exhibit "A" to White Construction's Complaint for Declaratory Judgment. On or about October 12, 1993, First Trust National Association filed, with the United States Coast Guard, its purported first preferred fleet mortgage on the barges which formed the foundation for the Southern Belle Casino. See Exhibit "F" to First Trust's Answer and Counterclaim.

2. On or about November 2, 1993, White Construction contracted to construct improvements to two barges furnished by the Debtor with the intention to produce a float-

ing dockside casino known as the Biloxi Belle II Casino. See Exhibit "C" to White Construction's Complaint for Declaratory Judgment. On or about June 1, 1994, the Debtor ordered work on the Biloxi Belle II Casino suspended and White Construction stopped work at that time. Affidavit of Neal Miller at 7. On or about June 21, 1994, First Trust National Association filed, with the United States Coast Guard, its purported first preferred ship mortgage on two barges which formed the foundation of the Biloxi Belle II Casino. See Exhibit "H" to First Trust's Answer and Counterclaim.

3. The Southern Belle Casino is located at Commerce Landing in Robinsonville, Tunica County, Mississippi. Affidavit of Neal Miller at 3. The renovations to the Biloxi Belle II Casino are partially completed on barge foundations and said casino is currently located at 13039 Seaway Road, Gulfport, Harrison County, Mississippi. Affidavit of Neal Miller at 7.

4. The Southern Belle Casino was not designed nor intended to be used, nor is it capable of being used, as a means of waterborne transportation. Affidavit I of Charles N. White at 2–3, Exhibit "1" to White's Motion, Exhibit "2" to White's Motion, Affidavit of Terry Warren at 1–5, Exhibit "3" to White's Motion; Affidavit of Neal Miller at 3–8. Instead, for the reasons set forth below, the Southern Belle Casino was designed and constructed to be permanently moored for exclusive use as a floating dockside casino.

a. The Southern Belle Casino is constructed on a platform built out of the remnants of four (4) barges. In July, 1993, four barges were pulled into the basin where the Southern Belle Casino is currently located. Prior to placing the barges at the project site, the site was graded and two concrete pads were poured at the location where the Southern Belle Casino was to be stationed. The barges were then placed upon the concrete pads and the boat basin was drained. The barges remained on dry land from July, 1993 through January, 1994, at which time the barges were refloated. Each barge was 220 feet long and 52.5 feet wide. To accommodate construction, the barges were ar-ranged in a rectangular configuration with two barges side-by-side and the other two in line behind them. Next, the abutting bows and sterns were removed and additional steel pieces were attached to make one solid steel perimeter around all four barges. In addition, steel members and steel plates were welded along the entire length of the inboard sides of each barge to form a single watertight structure. This work was completed by October 12, 1994, with the four barges being completely welded together. Affidavit of Terry Warren at 2–3; Affidavit of Neal Miller at 4–5.

b. Charles N. White Construction Company erected structural steel on the Southern Belle Casino barge platform to a height of approximately 64 feet above the deck. In addition, White poured a ground floor concrete slab which covers the entire length of the reconstructed barges and concrete slabs for the second and third floors. This work was covered with a roof, exterior skin and other construction work to comprise the Southern Belle Casino. Affidavit of Terry Warren at 3; Affidavit of Neal Miller at 5.

c. The Southern Belle Casino is currently situated in a self-contained basin which is built up from the ground level. The basin is comprised on three sides of steel sheet piling. The fourth side is enclosed by an earthen dam which is reinforced by vertical steel piling, horizontal steel piping, large external rip-rap stone, and a concrete water control structure. In order to remove the Southern Belle Casino from this basin, the concrete earthen dam would have to be torn out, an asphalt road and two other earthen dams would have to be demolished and the mile-long canal leading to the Mississippi River would have to be flooded. Affidavit I of Charles N. White at 3; Affidavit of Terry Warren at 3, 5; Affidavit of Neal Miller at 7.

d. The Southern Belle Casino is permanently moored through extensive connections to land-based structures and utilities. Affidavit I of Charles N. White at 3; Affidavit of Terry Warren at 3; Affidavit of Neal Miller at 5–6.

e. The Southern Belle Casino has no means of self-propulsion, no rudder, no an-

chor, and no steering mechanism. Affidavit of Terry Warren at 4; Affidavit of Neal Miller at 6. The Southern Belle Casino has no self-contained power, water, fire protection, sewerage, or life safety or rescue systems. Affidavit of Terry Warren at 3–4; Affidavit of Neal Miller at 5–6. The Southern Belle Casino has no navigational equipment or navigational lights. Affidavit of Terry Warren at 4; Affidavit of Neal Miller at 6. The Southern Belle has no life rafts, no life vests nor any other standard marine life-saving equipment. Affidavit of Terry Warren at 4; Affidavit of Neal Miller at 6. The Southern Belle has no captain or crew. Affidavit of Terry Warren at 4; Affidavit of Neal Miller at 6.

f. The Southern Belle is not positioned in a navigable waterway and is not subject to tides or currents of any kind. Affidavit I of Charles N. White at 2–3; Affidavit of Terry Warren at 5; Affidavit of Neal Miller at 7.

5. The Biloxi Belle II Casino was not designed nor intended to be used, nor is it capable of being used, as a means of waterborne transportation. Affidavit II of Charles N. White at 2–3; Affidavit of Neal Miller at 7–8. Instead, for the reasons set forth below, the Biloxi Belle II Casino was designed and constructed to be permanently moored for exclusive use as a floating dockside casino.

a. The Biloxi Belle II Casino is designed to be structurally and architecturally similar to the Southern Belle Casino. Upon completion, the Biloxi Belle II Casino will consist of three stories and extend approximately 70 feet above the deck of the owner furnished barges. Affidavit II of Charles N. White at 2; Affidavit of Neal Miller at 8.

b. The Biloxi Belle II Casino is designed to be permanently moored through extensive connections to land-based structures and utilities. Affidavit II of Charles N. White at 2–3.

c. The Biloxi Belle II Casino does not have nor is it designed to have a means of self-propulsion, a rudder, an anchor or a steering mechanism. Affidavit II of Charles N. White at 2–3; Affidavit of Neal Miller at 8. The Biloxi Belle II Casino has no nor is it

designed to have self-contained power, water, fire protection, sewerage or life safety and rescue systems. Affidavit II of Charles N. White at 2; Affidavit of Neal Miller at 8.

d. The Biloxi Belle II Casino has no and is not designed to have navigational equipment and navigational lights. Affidavit II of Charles N. White at 2; Affidavit of Neal Miller at 8. The Biloxi Belle II Casino has no and is not designed to have life rafts, life vests or any other standard marine life-saving equipment. Affidavit II of Charles N. White at 2; Affidavit of Neal Miller at 8.

e. The Biloxi Belle II Casino is not scheduled to have a captain or crew. Affidavit II of Charles N. White at 2; Affidavit of Neal Miller at 8.

6. No defendant, including First Trust, filed a counteraffidavit which challenged the factual predicate set forth in the affidavits submitted in support of White Construction's Motion for Summary Judgment. The Debtor, however, submitted the Affidavit of Neal Miller which supported and confirmed the facts alleged by White Construction.

### CONCLUSIONS OF LAW

#### A.

■ By failing to file a counteraffidavit to rebut the factual allegations set forth by White Construction, First Trust is deemed to have admitted such factual allegations and acknowledged that summary judgment is appropriate based on such facts. *See* F.R.C.P. 56; *Glass v. Dachel,* 2 F.3d 733 (7th Cir. 1993) (by failing to respond to motion, defendants admitted that no material issue of fact existed); *United Steelworkers of America v. University of Alabama,* 599 F.2d 56 (5th Cir.1979) (if opposing party fails to file counteraffidavits demonstrating factual dispute, summary judgment is appropriate); *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111 (5th Cir.1978) (once motion is supported with affidavit, opposing party must rebut with significant probative evidence).

#### B.

There are no genuine issues of material fact presented by White Construction's Motion for Summary Judgment and therefore,

pursuant to F.R.Bankr.P. 7056 and F.R.C.P. 56, summary judgment is appropriate.

### C.

On or about September 7, 1994, White Construction filed its Complaint for Declaratory Judgment in this adversary proceeding. Count I of White Construction's Complaint seeks a declaration as to whether the partially constructed Biloxi Belle II Casino and the completed Southern Belle Casino are "vessels" for purposes of federal admiralty and maritime matters and the Ship Mortgage Act, 46 U.S.C. § 30101 *et seq.*

### D.

■ There is an actual pending controversy existing between White Construction and First Trust, a defendant herein, as to whether the Biloxi Belle II Casino and the Southern Belle Casino constitute "vessels" for purposes of federal admiralty and maritime matters and the Ship Mortgage Act. Accordingly, White Construction is entitled to a declaratory judgment of this Court pursuant to Rule 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure as to whether the Biloxi Belle II Casino and the Southern Belle Casino are or are not "vessels" for purposes of federal admiralty and maritime matters and the Ship Mortgage Act. *See Joslin v. Secretary of Dept. of Treasury,* 832 F.2d 132, 135 (10th Cir.1987); *International Soc. for Krishna Consciousness v. Enz,* 495 F.Supp. 373, 378 (D.Ariz.1979).

### E.

■ For purposes of federal admiralty and maritime matters and the Ship Mortgage Act, 46 U.S.C. § 30101 *et seq.,* the term "vessel" is a term of art which is defined by 1 U.S.C. § 3 as "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." This definition is consistent with the policy underlying federal admiralty and maritime jurisdiction. Said policy was recently defined by the United States Court of Appeals for the Second Circuit as follows:

> Admiralty jurisdiction was created to provide a neutral federal forum and a uniform body of law to adjudicate rights and liabilities as they relate to the trafficking of seafaring vessels. (*Citations omitted.*) Simply stated, the "fundamental interest giving rise to maritime jurisdiction is 'protection of maritime commerce'." (*Citations omitted.*) Therefore, *in examining whether admiralty jurisdiction encompasses a claim, a federal court must initially determine whether the subject matter of the dispute is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction.* (*Emphasis added.*)

*Atlantic Mutual Insurance Co. v. Balfour Maclaine International,* 968 F.2d 196, 199–200 (2nd Cir.1992). In other words, there must be some connection with the business of maritime commerce—an ability to be used for transportation on water—in order to qualify for the protection afforded admiralty and maritime matters.

Consistent with the policy underlying federal admiralty and maritime matters, if the "watercraft or other artificial contrivance" is not "used, or capable of being used, as a means of transportation on water," it does not qualify as a "vessel" as defined by 1 U.S.C. § 3. For example, the Court, in *Berton v. Tietjen & Lang Dry Dock Co.,* 219 F. 763, 771 (D.N.J.1915), stated:

> A stage designed to be used in connection with painting or repairing the side of a vessel would not become such merely because it was capable of floating on the water, though it was used by workmen in thus painting and repairing, while the same was on the water, rising and falling with the tide, or because it could be moved alongside or around such vessel, and while being moved was capable of holding persons or property. In what respect can a dry dock be distinguished from such a stage? True, it would be larger, and in addition to being capable of holding persons and property, and being used in moving them about, it would also be capable of being sunk to allow the water to come in, that a vessel might be floated thereon, and thereafter, upon being emptied of its water, of rising with the tide, lifting the ves-

sel with it. *It is, however, not designed or intended as a means of transportation, and merely that it can for temporary purposes be used for transporting either persons or freight does not make it a vessel within the definition of section 3....* (Emphasis added).

### F.

██ The Biloxi Belle II Casino and the Southern Belle Casino certainly float on water. However, for the reasons stated above in the Court's Findings of Fact, the Biloxi Belle II Casino and the Southern Belle Casino were not designed or intended nor are they realistically capable of being used as a *means of transportation* on water in the business of maritime commerce. Instead, the Biloxi Belle II Casino and the Southern Belle Casino were designed and intended to be used exclusively as permanently moored, dockside gaming casinos pursuant to the Mississippi Gaming Control Act, *Miss.Code Ann.,* § 75–76–1 *et seq.* Therefore, the Biloxi Belle II Casino and the Southern Belle Casino do not constitute "vessels" for purposes of federal admiralty and maritime matters and the Ship Mortgage Act, 46 U.S.C. § 30101 *et seq.*

The Court's holding is consistent with recent decisions relating to dockside casinos as well as a long line of federal cases which addressed the exclusive federal jurisdiction arising from admiralty and maritime matters. For example, in *Ketzel v. Mississippi Riverboat Amusement Ltd.,* 867 F.Supp. 1260 (S.D.Miss.1994), the Court held that the existing Biloxi Belle I Casino is not a "vessel". Specifically, the Court stated:

Similar to the "floating factory" in *Unisea* and the "floating dance hall" in *Hayford,* the Biloxi Belle is nothing but a "floating casino". That the Biloxi Belle must be moved across navigational waters in the event of a hurricane is not determinative of the issue whether the structure is a vessel.... Indeed, the moving of the structure in the event of a hurricane is incidental to and does not alter the Biloxi Belle's basic purpose as a casino. The physical attachments of the structure to the dock, including relatively permanent utility connections—although not conclusive—lend strong support to a nonvessel characterization of the structure.

That the Biloxi Belle looks like a ship engaged in transportation of cargo or passengers is not enough. The Biloxi Belle is not equipped, nor does it serve any transportation function whatever. To conclude otherwise would be absurd.

*Id.* at page 1268.

Similarly, in *Pavone v. Mississippi Riverboat Amusement Corporation, et al.,* Civil Action No. 93–3354, 1994 WL 97820 (E.D.La., March 21, 1994), the Court also held that the existing Biloxi Belle I is not a "vessel". In addressing the physical characteristics of the existing Biloxi Belle I, the Court noted:

The Biloxi Belle was originally constructed in 1983 as a floating restaurant, and was *designed and constructed without propulsion engines, rudder, or any navigational equipment.* At the time of plaintiff's alleged accident, Biloxi Belle was (and still is) located in Biloxi, Mississippi, *moored to the shore by lines tied to concrete-filled sunken steel pipes.*

Biloxi Belle was originally designed to look like a riverboat with a paddlewheel and pilothouse, which served only for decoration. Although the paddlewheel is motorized, it was constructed to turn completely above the water level, and therefore, is not used as a means of propulsion. *Biloxi Belle also was constructed without navigational aids, such as running lights and anchor lights. Biloxi Belle does not have any working features generally associated with a vessel in navigation. There are no crewquarters or lifesaving equipment, nor is there a captain who is master.*

In order to function as a gambling casino, Biloxi Belle was moved by tow to its present location in Biloxi, Mississippi on August 15, 1992. *Biloxi Belle has never been used, nor is it intended to be used, as a means of transporting passengers, cargo or equipment.*

Confronted by the Fifth Circuit's ever broadening definition of a "vessel", coupled with an alleged injury emanating from employment on a floating gambling casino, it

is understandable that plaintiff's counsel might seriously contend that as a bartender for the Biloxi Belle plaintiff is entitled to Jones Act seaman status. Even so, *the facts of this case cause the Court to conclude that the Biloxi Belle is not a "vessel" as a matter of law.* (Emphasis added). *Id.* at pages 2–3; *see also Anderson v. Maritime Group, Ltd. et al.,* Civil Action No. A–24002–94–0096 (Harrison County Cir. Ct., 2d Jud. Dist., July 18, 1994) (Palace Casino was designed and constructed to be permanently moored and not used as means of transportation, not a vessel for maritime jurisdiction purposes).

Finally, in *Hayford v. Doussony,* 32 F.2d 605 (5th Cir.1929), the Court held that a gunboat converted and refitted as an amusement and dance barge was held not to be a vessel, although it could be moved and was moved when the Mississippi River was high. Specifically, the Court stated:

> The Pirate Ship *was not used, or intended to be used, to carry freight or passengers from one place to another, was not an instrument of navigation or commerce,* and performed no function that might not have been performed as well by a floating stage or platform permanently attached to land. A result of it not being a vessel or instrument of navigation or commerce engaged in any maritime venture was that a maritime lien did not attach for the compensation for the services rendered by any of the libelants. (Citations omitted). *The fact that for purposes foreign to those for which it was intended and adapted to be used it was towed to and from the place where it was used for dancing and amusement was not enough to bring it within the admiralty jurisdiction.* (Citations omitted). (Emphasis added).

*Id.* See also *Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co.,* 271 U.S. 19, 46 S.Ct. 379, 70 L.Ed. 805 (1926) (wharf boat built primarily as an office, warehouse and wharf, which could be moved, held not to be a vessel); *Katheriner v. UNISEA, Inc.,* 975 F.2d 657 (9th Cir.1992) (ship converted into permanently moored floating fish processing plant held not to be a vessel); *Ducrepont v. Baton Rouge Marine Ent.,* 877 F.2d 393 (5th Cir.1989) (barge converted into a stationary work platform moored firmly to shore but adjusted to respond to tides held not to be a vessel); *Keller v. Dravo Corp.,* 441 F.2d 1239 (5th Cir.1971), *cert. denied,* 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972) (floating dry dock is not a vessel within the meaning of admiralty jurisdiction); *The Hendrick Hudson,* 11 Fed. Cases 1085 (S.D.N.Y.1869) (dismantled steamboat refitted as saloon and hotel held not to be a vessel).

Based on the above, the Court concludes that the Biloxi Belle II Casino and the Southern Belle Casino are not "vessels" for purposes of federal admiralty and maritime matters and the Ship Mortgage Act, 46 U.S.C. § 30101 *et seq.*

## G.

First Trust contends that certificates of documentation issued by the United Coast Guard conclusively establish the Biloxi Belle II Casino and the Southern Belle Casino as "vessels". First, the United States Coast Guard issued certificates of documentation for the barges which form the foundation of these casinos. Such issuance is not determinative of whether the casinos constitute "vessels" as defined by 1 U.S.C. § 3. More importantly, the documentation process is not intended to be, nor is it, conclusive as to the issue of what constitutes a "vessel" for purposes of federal admiralty and maritime matters and the Ship Mortgage Act. *See Daniel v. Ergon, Inc.,* 892 F.2d 403 (5th Cir.1990).

Second, even if the certificates of documentation were deemed to be determinative, such certificates were invalid at the time First Trust filed its purported first preferred ship mortgage on the Southern Belle Casino and the Biloxi Belle II Casino. One of the requirements for a ship mortgage under the Ship Mortgage Act is that the mortgage must cover a "vessel" with valid documentation. *See* 46 U.S.C. § 31322(a)(1)(C); 46 C.F.R. § 67.01–1 ("Documented vessel means a vessel for which a valid certificate of documentation is outstanding."). Whether a "vessel" has valid documentation is governed by chapter 121 of Title 46 and the regulations

promulgated thereunder. Pursuant to 46 C.F.R. § 67.23–9 there are several "triggering events" that automatically invalidate the documentation of a "vessel". One such event is when a "vessel ceases to be capable of being used as a means of transportation on water". *See* 46 C.F.R. § 67.23–9(a)(8). In this instance, the Biloxi Belle II Casino and the Southern Belle Casino were not "capable of being used as a means of transportation on water" when First Trust filed its purported ship mortgage on the casinos. As a result, the documentation previously issued by the United States Coast Guard was invalid. Consequently, the purported mortgage filed by First Trust did not qualify as a first preferred ship mortgage under the Ship Mortgage Act. *See* 46 U.S.C. § 12111(c)(1)(A) (ship mortgage must be filed before documentation is rendered invalid).

### H.

White Construction's Complaint for Declaratory Judgment, in Counts II and III, also seeks a declaration that because the Biloxi Belle II Casino and the Southern Belle Casino are not "vessels", First Trust National Association does not possess a first preferred ship mortgage pursuant to the Ship Mortgage Act, 46 U.S.C. § 30101 *et seq.*

### I.

█ There is an actual pending controversy existing between White Construction and First Trust, a defendant herein, as to whether First Trust possesses a first preferred ship mortgage on the Biloxi Belle II Casino and the Southern Belle Casino pursuant to the Ship Mortgage Act, 46 U.S.C. § 30101 *et seq.* Accordingly, White Construction is entitled to a declaratory judgment pursuant to Rule 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure as to whether First Trust possesses a first preferred ship mortgage on the Biloxi Belle II Casino and the Southern Belle Casino pursuant to the Ship Mortgage Act, 46 U.S.C. § 30101 *et seq. See Joslin v. Secretary of Dept. of Treasury,* 832 F.2d 132, 135 (10th Cir.1987); *International Soc. for Krishna Consciousness v. Enz,* 495 F.Supp. 373, 378 (D.Ariz.1979).

### J.

█ A first preferred ship mortgage granted pursuant to the Ship Mortgage Act may only be perfected on a "vessel", as defined by 1 U.S.C. § 3. *See* 46 U.S.C. §§ 30101, 31321 and 31322. For the reasons previously stated, the Biloxi Belle II Casino and the Southern Belle Casino do not constitute "vessels" as defined by 1 U.S.C. § 3. As a result, First Trust does not possess a first preferred ship mortgage on the Biloxi Belle II Casino and the Southern Belle Casino.

### K.

█ Moreover, as noted above, in order to possess a first preferred ship mortgage pursuant to the Ship Mortgage Act, the "vessel" must have a valid certificate of documentation outstanding at the time the purported first preferred ship mortgage is filed. For the reasons stated in paragraph no. G above, there was no valid certificate of documentation outstanding on the Southern Belle Casino and the Biloxi Belle II Casino when First Trust filed its purported first preferred ship mortgage. Accordingly, First Trust does not possess a first preferred ship mortgage on the Biloxi Belle II Casino and the Southern Belle Casino.

### *CONCLUSION*

This Court concludes that there is no genuine issue as to any material fact and that White Construction is entitled to judgment in its favor as a matter of law that the Biloxi Belle II Casino and the Southern Belle Casino are not "vessels" for purposes of federal admiralty and maritime matters and the Ship Mortgage Act, 46 U.S.C. § 30101 *et seq.,* and that First Trust National Association does not possess a valid first preferred ship/fleet mortgage on either the Biloxi Belle II Casino or the Southern Belle Casino.

**IT IS, THEREFORE, ORDERED** that White Construction's Motion for Summary Judgment be, and same hereby is, **GRANTED.**

**SO ORDERED.**

### FINAL JUDGMENT

This matter came on for hearing on the Motion of the Plaintiff, Charles N. White Construction Company ("White Construction") for Summary Judgment on Counts I, II and III of its Complaint for Declaratory Judgment against the defendants listed herein. In accordance with this Court's Memorandum Opinion and Order entered this day in the above styled and numbered cause, summary judgment should be entered in favor of White Construction pursuant to Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** that the Biloxi Belle II Casino and the Southern Belle Casino are not "vessels" for purposes of federal admiralty and maritime matters and the Ship Mortgage Act, 46 U.S.C. § 30101 *et seq.* and that First Trust National Association does not possess a first preferred ship/fleet mortgage on the Biloxi Belle II Casino and Southern Belle Casino pursuant to the Ship Mortgage Act, 46 U.S.C. § 30101 *et seq.*

**SO ORDERED, ADJUDGED, AND DECREED.**