**CREDIT SUISSE FIRST BOSTON MORTGAGE CAPITAL LLC,**
Plaintiff,

v.

**DORIS, Official No. 566240 et al., Defendants.**

Consolidated with

Credit Suisse First Boston Mortgage Capital LLC, Plaintiff,

v.

**Bayou Caddy's Jubilee Casino (Official No. 519419) and B 527 (Official No. 514272), Defendants.**

Civil Action Nos. 4:99CV283–P–B, 4:99CV284–P–B.

United States District Court, N.D. Mississippi, Greenville Division.

May 12, 2000.

Stephen H. Leech, Jr., Stephen H. Leech, Jr., Atty., Jackson, MS, for Credit Suisse First Boston Mortgage Capital LLC.

C.W. Walker, III, Lake Tindall, LLP, Greenville, MS, for Doris, Greenville Casino Partners, L.P.

Paul B. Jones, Hinshaw & Cubertson, Minneapolis, MN, for PDS Financial Corp.

## MEMORANDUM OPINION

PEPPER, District Judge.

This cause is before the Court on the following motions by defendants in these consolidated cases: Motion(s) to Dismiss for Lack of Subject Matter Jurisdiction in both 4:99CV283 and 4:99CV284 and a Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted and Motion for Abstention filed in cause number 4:99CV283. The Court, having reviewed the briefs of the parties, the authorities cited and being otherwise fully advised in the premises, finds as follows, to-wit:

## PROCEDURAL AND FACTUAL BACKGROUND

This is an action in which the plaintiff seeks to recover the outstanding indebtedness on ship mortgages on several vessels owned and/or operated as floating casinos by the various defendants. As is typical of river boat gambling casinos in Mississippi, the vessels at issue do not regularly traverse the waters of the Mississippi River; instead, they are "in a more or less permanently moored configuration to the shore, and have not been used in maritime commerce." Defendants' Brief in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction at 3.

Plaintiff filed its complaints in the above-referenced actions, seeking to foreclose *in rem* on Preferred Ship Mortgages on the DORIS, BAYOU CADDY'S JUBILEE CASINO and B 527 respectively. On or about January 28, 2000, Greenville Casino Partners, LP, claimant to the vessels and/or debtors/guarantors[1] to the ship mortgages filed Motions to Dismiss in each of the cases, seeking dismissal for lack of subject matter jurisdiction. A few days thereafter, these defendants joined with others in a suit filed in the Circuit Court of Washington County, Mississippi against Credit Suisse in which they sought a de-

---

1. For ease of reference, these parties will    hereafter be referred to as defendants.

claratory judgment as to certain matters, along with actual and punitive damages for Credit Suisse's alleged bad faith in its contractual dealings.[2]  Thereafter, Credit Suisse filed amended complaints in its federal suits, adding *in personam* claims against Greenville Casino Partners, Greenville CP, Inc., Casino Gaming International, LLC and Greenville Hotel II, LLC-parties defendant *identical* to the plaintiffs in the state court action.  The claimant/defendants thereafter filed another motion to dismiss, raising a Rule 12(b)(6) motion as additional grounds and urging the Court to apply abstention principles to dismiss the claims against the *in personam* defendants.  Plaintiff Credit Suisse has responded in opposition to the requested relief.  The matter has been fully briefed and the Court is ready to rule.

## LEGAL ANALYSIS

### A.  Subject Matter Jurisdiction

Defendants seek dismissal of the instant cases on the ground that the "floating casinos" which are the subject of the preferred ship mortgages in this case are not "vessels" within the meaning of the Ship Mortgage Act, therefore divesting this court of jurisdiction over the subject matter of the suits.  This Court has examined the pleadings in connection with the authorities cited by all parties.  Notwithstanding the defendants' contentions, the Court is persuaded that it has subject matter jurisdiction over both the *in rem* action and the *in personam* claims against the various named defendants.  "Our jurisdictional inquiry is 'limited to observing whether the complaint is drawn to seek recovery under a federal statute....'" *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1347–48 (5th Cir.1985)(other citations omitted).  But, "when a defen-dant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case."  *Id.* at 1347.

The pleadings in the instant case clearly evince a claim falling under the Court's admiralty and maritime jurisdiction: "This is an admiralty and maritime claim within the jurisdiction of the United States ... pursuant 28 U.S.C. 1333, Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims."  More specifically, it has its genesis in the Ship Mortgage Act.  Title 46, section 31325(c) of the Act gives a specific grant of jurisdiction for both *in rem* and *in personam* actions which seek to recover outstanding indebtedness on a preferred ship mortgage.  Therefore, pursuant to the aforementioned authority, it is necessary for this Court to consider defendants' motion to dismiss as one for failure to state a claim under F.R.C.P. 12(b)(6).[3]

### B.  Failure to State a Claim Upon Which Relief Can Be Granted

Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate if a party fails to state a claim under which relief can be granted.  The allegations of the complaint must be accepted as true when the Court considers whether the plaintiffs have stated a cause of action.  *See Cramer v. Skinner*, 931 F.2d 1020 (5th Cir.1991), *cert. denied*, 502 U.S. 907, 112 S.Ct. 298, 116 L.Ed.2d 242 (1991).  Only the complaint and the allegations contained therein are to be considered in reaching a decision on a defendant's Rule 12(b)(6) motion to dismiss.  The complaint should not be dismissed unless it appears beyond doubt that the

---

**2.**  Actually, the state court action was originally filed on January 25, 2000; an amended complaint was filed on January 31, 2000.

**3.**  Although this point was not expressly conceded by defendants, they implicitly recognize as much by virtue of the manner in which they styled their subsequent motion to dismiss as brought, in the alternative under Rule 12(b).

plaintiffs can prove no set of facts in support of its claims which would entitle it to relief.[4]

■ As intimated earlier, defendants seek dismissal predicated on the argument that the floating casinos at issue do not satisfy the required element of "vessel" status under the Ship Mortgage Act. However, defendants cited only one decision interpreting the Ship Mortgage Act in such a fashion.[5] The case so identified by defendants is *In re Biloxi Casino Belle Inc.,* 176 B.R. 427 (S.D.Miss.1995). The Court finds that decision distinguishable for several reasons. First, that the procedural context of *In re Biloxi* was different: the Bankruptcy Court made its determination in the wake of a virtually unopposed motion for summary judgment-the opposing party filed no affidavits in opposition to the motion. As a further matter, the case is distinguishable on its facts: "the BILOXI BELLE was indisputably incapable of meeting the test for vessel status-even under the most liberal construction afforded the definition. As noted by Judge Gaines, [i]n order to remove the Southern Bell Casino from this [steel and earthen] basin, the concrete earthen dam would have to be torn out, an asphalt road and two other earthen dams would have to be demolished and the mile-long canal leading to the Mississippi River would have to be flooded." *Id.* at 430. Hence, Judge Gaines' conclusion that "[t]he Biloxi Belle II Casino was not designed nor intended to be used, *nor is it capable of being used, as a means of water-borne transportation,*"

is largely indisputable. *Id.* at 431. In the present case, however, the Court has no such facts before it.

As a second matter, the Court would simply note that many of the decisions relied upon by the bankruptcy court were rendered under the framework of the Jones Act or other maritime torts, in which the decisional law is decidedly more complex. For example, in *Pavone v. Mississippi Riverboat Amusement Corporation,* the district court found that the floating casino failed to meet the definition of a vessel for purposes of the Jones Act.1994 WL 97820 (E.D.La. 1994). On appeal, the Fifth Circuit found it advisable to affirm the district court's grant of summary judgment on narrower grounds than those enunciated by the district court. It eschewed the classical maritime test for vessel status and instead applied tests aimed at determining 1) whether the vessel had been withdrawn from navigation and 2) the vessel status of an unconventional craft under the work platform analysis introduced in *Bernard v. Binnings Construction Company.*[6] 52 F.3d 560, 568–570 (5th Cir.1995). The Court of Appeals described the impetus for doing so as follows:

> [O]ur esteemed colleagues ... have rendered opinions in the instant cases crafted in classical maritime methodology for determining, on the basis of a watercraft's unique physical and functional attributes, whether such a craft-here the BILOXI BELLE-is a "vessel," conventional or nonconventional, *for purposes*

---

4. Despite the defendants' submission of an affidavit in support of their motion, the Court declines to consider this as a motion for summary judgment pursuant to F.R.C.P. 56. Instead, the Court chooses to disregard the scanty evidentiary submissions and to rely solely on the pleadings and the interpretative case law in reaching its decision. *Boyle v. Governor's Veterans Outreach & Assistance Center,* 925 F.2d 71, 74 (3d. Cir.1991).

5. The Court has located two additional decisions, both rendered in the bankruptcy context, which arrive at conflicting conclusions on much the same issue. The judge in *In the*

*Matter of Treasure Bay Corporation,* 205 B.R. 490 (S.D.Miss.1997), found the Treasure Bay Casino failed to qualify for vessel status under the Ship Mortgage Act under very similar circumstances as the BILOXI BELLE, described *supra. In re AMGAM Associates,* by contrast, recognized the GOLD COAST CASINO as a vessel for purposes of a maritime lien asserted against it in connection with services rendered the vessel while it was being towed from shipyard to its mooring for use as a casino. 239 B.R. 737 (Bkrtcy.S.D.Miss.1999).

6. 741 F.2d 824 (5th Cir.1984).

*of the Jones Act or the general maritime law. We are not prepared to say that either opinion is flawed; that the analysis in either is erroneous; or that the result reached on the narrow question whether the BILOXI BELLE was a Jones Act vessel* vis-a-vis Pavone and Ketzel at the times their accidents occurred *is wrong.* We have nagging concerns nevertheless that vessel analyses of the kinds performed by the district courts in the instant cases could be overbroad, albeit through inadvertence, and thereby return to haunt us in slightly different contexts in the future.

*Id.* at 568. In a footnote immediately following, the Court went on to elaborate on certain of the circumstances in which the district court's approach might prove overbroad: "The approach we adopt infra also avoids the conflict in 'vessel' status among the Jones Act, the general maritime law, state casino licensing classification, Coast Guard documentation, and 'dictionary' definitions." *Id.* n. 23.

Those are precisely the circumstances presently before the Court. The definition of vessel held to apply in cases under the Ship Mortgage Act is the general, and liberally construed, definition contained in Title 1, § 3: "The word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." This definition has been held by the Fifth Circuit to include suits *in rem* against vessels as ill-suited to navigation as a measly houseboat under the Ship Mortgage Act. In *Miami River Boat Yard, Inc. v. 60' Houseboat,* the Court of Appeals admonished the district court for erroneously taking into consideration the question of a vessel's navigational status in determining whether the craft was capable of being subjected to a maritime lien:

"The District Judge, perhaps influenced greatly by cases turning on the question of whether an admitted vessel had previously been withdrawn from navigation, thought that status as a 'vessel' required an intent that the craft be employed in navigation and commerce either at the moment or in the immediate future. . . .

A houseboat is nonetheless a boat because, as its name implies, it affords a water-borne place to live with the added advantage of at least some maritime mobility. That she has no motive power and must, as would the most lowly of dumb barges, be towed, does not deprive her of the status of a vessel."

390 F.2d 596, 597 (5th Cir.1968). *See also Pleason v. Gulfport Shipbuilding Corporation,* 221 F.2d 621 (5th Cir.1955)(stationary shrimp plant held a vessel so as to be subject to maritime lien). The Fifth Circuit applied the same logic in the older case of *Campbell v. Loznicka, The Scorpio,* in which it accorded vessel status to an old Navy hull for purposes of a suit to enforce a maritime lien:

Whether or not the Scorpio had ever sailed the seas or transported any portion of the world's commerce, is, therefore, not controlling. Undoubtedly, it was a type of water craft, long afloat, readily towable, and entirely capable of being used, even if inefficiently, in transportation, when moved by rug [sic], and was a "vessel" within the wording of the statute, and within the intent and purpose of the law as defined in the latest decision of the Supreme Court on the subject

. . . .

181 F.2d 356, 359 (5th Cir.1950). This emphasis on the vessel's capacity for use as a means of transportation indicates a marked preference upholding maritime liens-a preference equally applicable to cases prosecuted under the aegis of the Ship Mortgage Act. Nowhere in the defendants' motion do they intimate that the floating casinos at issue aren't "capable of being used" as a means of transportation over water.[7] Based on the foregoing au-

---

7. Despite the Court's decision to disregard the evidentiary submissions, the Court would note

thorities, the Court therefore finds that neither the facts as alleged in the complaint, nor the applicable law, warrant dismissal of the instant suit. Defendants' motion to dismiss for failure to state a claim is not well-taken and should be denied.

### C. Application of the Abstention Doctrine to *In Personam* Action

Yet another aspect of the defendants' motion is one for abstention. They ask that this Court dismiss the action against the in personam defendants in favor of a state court adjudication of the issues. The defendants' motion is not well-taken. As pointed out by the plaintiff in its opposition brief, the only type of abstention arguably applicable is that recognized under *Colorado River Water Conservation District v. United States* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Under *Colorado River,* a district court may abstain from hearing a case under certain rare circumstances where a parallel action is pending in state court. The Supreme Court outlined several factors for determining the propriety of abstention in *Colorado River* and a subsequent case, *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation,* 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). They are:

1. Assumption by either court of jurisdiction over a res;

2. The relative inconvenience of the forums;

3. The avoidance of piecemeal litigation;

4. The order in which jurisdiction was obtained by the concurrent forums;

5. Whether and to what extent federal law provides the rules of decision on the merits; and

6. The adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Black Sea Investment, Ltd. v. United Heritage Corp.,* 204 F.3d 647, 650 (5th Cir. 2000).

In the instant case, factors 1, 3 and 5 weigh in favor of this Court's exercise of jurisdiction. This Court has indeed assumed jurisdiction of the vessels which are the subject of the plaintiff's *in rem* action; the *in personam* action against the individual defendants is related to the *in rem* action inasmuch as the defendants are either makers or guarantors of the ship mortgages at issue. At least as to the *in rem* action, federal law will control the disposition of the case. Likewise, factor 4 also weighs in favor of the exercise of jurisdiction, rather than abstention. The *in rem* action was filed in advance of the state court action; more importantly, the state court action has not so advanced as to warrant the invocation of abstention principles. Factor 2, relating to the convenience of the forum, as well as the adequacy of state court proceedings, is of neutral weight under the circumstances. All that being said, abstention is inappropriate in the instant case. The defendants' motion is not well-taken and should be denied.

### CONCLUSION

For the foregoing reasons, the Court finds that defendants' Motion(s) to Dismiss should be denied. An order will issue accordingly.

---

that numerous authorities have found that certain land-based connections are insufficient to wrest vessel status from a craft which otherwise qualifies under the broad § 3 definition. *The Showboat,* 47 F.2d 286 (D.Mass.1930)("[M]ooring lines and chains can be readily cast off; and the electric wire are so fitted as to be easily detachable"); *Pleason v. Gulfport Shipbuilding Corporation,* 221 F.2d 621 (5th Cir.1955)(recognizing shrimp plant as a vessel notwithstanding land-based telephone and electrical lines).